# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MELVIN STANLEY,                          )
                                         )
                    Petitioner,         )
                                         )
vs.                                      )        **Case No. 10-CV-705-JHP-PJC**
                                         )
MIKE ADDISON, Warden,                    )
                                         )
                Respondent.          )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action.  Petitioner, a state inmate currently represented by counsel, initially filed his habeas petition pro se (Dkt. # 1) on November 2, 2010. Respondent filed a response (Dkt. # 5) and provided copies of the trial court transcripts for use by the Court in this habeas action.  See Dkt. # 7.

Three months after Petitioner filed his pro se petition, attorney Amy L. McTeer filed an entry of appearance (Dkt. # 10) on behalf of Petitioner.  She also filed Petitioner's reply (Dkt. # 11) to the response, along with a motion to file an amended petition (Dkt. # 13).  By Order filed February 18, 2011 (Dkt. # 14), the Court granted the motion to amend.  On April 19, 2011, Petitioner's attorney filed a "second petition for writ of habeas corpus" (Dkt. # 15).  In response to the second petition, Respondent filed a motion to dismiss for failure to exhaust state remedies (Dkt. # 17).  By Opinion and Order filed August 23, 2011 (Dkt. # 19), the Court determined that the second petition was a "mixed petition" and was subject to dismissal, but afforded Petitioner the opportunity to file an amended petition in order to delete his unexhausted claims. On September 12, 2011, Petitioner filed an amended petition (Dkt. # 20).  Respondent filed a response (Dkt. # 22) and Petitioner filed a reply (Dkt. # 23).

On May 22, 2013, or almost eighteen months after the amended petition had been fully briefed, attorney Steven Louis Little entered an appearance on behalf of Petitioner (Dkt. # 25). Attorney Little took no action on behalf of Petitioner until more than six months later when, on December 9, 2013, he filed a document docketed as a "Motion to Reconsider," but titled "Amended Petition" (Dkt. # 26).  Three days later, on December 12, 2013, attorney Little filed a document docketed as an "Amended Petition for Writ of Habeas Corpus," but titled "Motion to Reassert Amended Petition" (Dkt. # 27).

For the reasons discussed below, the Court denies Petitioner's amended petition for a writ of habeas corpus (Dkt. # 20).  The Court also denies relief requested in the recently filed motions to reconsider and to amend the petition.

As a preliminary matter, the Court notes that the amended petition (Dkt. # 20) replaces and supersedes both the original petition (Dkt. # 1) and the second petition (Dkt. # 15).  For that reason the original petition and the second petition shall be declared moot.

### BACKGROUND

In the late evening and early morning hours of May 27-28, 2007, Sandra Stephens and her fiancé, Jacob Craig, went to the house of an "on-and-off" friend who lived in Broken Arrow, Oklahoma. (Dkt. # 7, Tr. Vol. II at 149).  Stephens was six months pregnant. Id. at 148-49.  Craig had been drinking, so Stephens drove to the friend's house where they hung out, played video games, talked, and watched movies. Id. at 150.  Around 1:30 a.m., Stephens and Craig decided to return to their home in Tulsa, located in the area of 21st Street and Sheridan Ave. Id. at 157-58. Craig fell asleep during the drive home, only to awaken and find himself "underwater" and their car overturned in a ditch or ravine. Id. at 151.  Testimony at trial suggested that Stephens had

apparently gotten lost on the return drive home, id. at 152, and it was speculated that she fell asleep at the wheel, id. at 251.  Craig and Stephens  climbed out of their car, seemingly unhurt, and made their way up to the edge of the roadway.  Id. at 151-52.  While Stephens tried to flag down a car, Craig returned to their overturned vehicle in an attempt to locate a cell phone to call for help.  Id. at 152.

As he was searching the car, Craig heard "a screech and then a thud," id., and then a "very loud noise," id. at 153.  He returned to the road and initially could not locate Stephens.  Id.  As he looked around, he saw "a flipped SUV and her body mangled."  Id. at 170.  Craig found Stephens "in the grass and she was mutilated. Her stomach that was solid like a pregnant woman's would be was crushed."  Id. at 153.  Craig then saw "the man that had hit her [and told him] I'm going to kill you."  Id.  That man was identified as Petitioner, Melvin Stanley.  Id. at 154.  Stephens died at the scene.  Id. at 192-93.

The advanced traffic investigators for the Tulsa Police Department (TPD) determined that Petitioner's vehicle hit Stephens while she was standing approximately three feet from the edge of the asphalt and in the lane of traffic.  Id. at 269.  The investigators also determined that Petitioner's SUV was traveling approximately 65-70 mph in a 50 mph speed zone.[1]  Id. at 261.  A TPD officer at the scene, responsible for collection and inventory of items from Petitioner's vehicle, recovered a metal flask next to the SUV and a bag containing a green leafy substance from inside the overturned SUV.  Id. at 278-79.  The flask contained a liquid that smelled like alcohol.  Id. at 280. Petitioner was transported to Saint Francis Hospital for medical attention following the collision.

---

[1]The investigators recovered data from Petitioner's 2005 Chevy Equinox indicating that, five seconds before the SUV struck Stephens, rolled, and came to rest on its roof, Petitioner's vehicle was traveling at 76 mph.  (Dkt. # 7, Tr. Vol. II at 344-46).

Id. at 297.  Soon after, a TPD Officer arrived to obtain a sample of Petitioner's blood.  Id. at 297-301.  Petitioner consented to having his blood drawn.  Id. at 300.  The results of the blood test showed Petitioner's blood alcohol level to be 0.18.  (Dkt. # 7-1, Tr. Vol. III at 406).  The blood test also returned a positive result for marijuana.  Id. at 403.

Based on those events, Petitioner was charged in Tulsa County District Court, Case No. CF-2007-4134.  On December 1, 2008, Petitioner was convicted by a jury of First Degree Manslaughter (Count 1), Unlawful Possession of a Controlled Drug (Marijuana) (Count 3), and Driving with a Suspended License (Count 4).  The jury found him not guilty of Count 2, Manslaughter in the First Degree (unborn child).  The trial court dismissed Count 5, Failure to Carry Insurance/Security Verification Form. On December 15, 2008, the trial court sentenced Petitioner, in accordance with the jury's recommendation, to thirty (30) years imprisonment on Count 1, five (5) years imprisonment on Count 3, and thirty (30) days in custody for Count 4, with the sentences for Counts 3 and 4 to be served concurrently, but consecutive to the sentence for Count 1.  Petitioner was represented at trial by attorney Keith Bergman.

Petitioner, represented by attorney Janet Chesley, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA).  On appeal, Petitioner raised six (6) propositions of error, as follows:

| | |
|---|---|
| Proposition I: | The admission of misleading, irrelevant, and unfairly prejudicial evidence denied Mr. Stanley a fair trial |
| Proposition II: | The evidence presented at Mr. Stanley's trial was insufficient to prove beyond a reasonable doubt that he possessed marijuana |
| Proposition III: | Second-stage errors deprived Mr. Stanley of a fair sentencing determination |
| Proposition IV: | Mr. Stanley was denied effective assistance of counsel in violation of his rights under the Sixth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma |

|                 | Constitution |
|-----------------|--------------|
| Proposition V:  | Mr. Stanley's sentence is excessive under the circumstances and should be modified |
| Proposition VI: | The accumulation of errors deprived Mr. Stanley of a fair trial and reliable verdict |

(Dkt. # 22-1).  In an unpublished Summary Opinion, filed April 20, 2010, in Case No. F-2008-1246, the OCCA affirmed Petitioner's Judgments and Sentences.  (Dkt. # 22-3).  Nothing in the record suggests that Petitioner sought certiorari review before the United States Supreme Court.

On November 30, 2011, or more than a year after commencing this habeas corpus action, Petitioner filed an application for post-conviction relief in the Tulsa County District Court.  The court denied relief on October 31, 2013, and, on November 19, 2013, Petitioner filed a notice of post-conviction appeal.  To date, no post-conviction appeal has been docketed at the OCCA.

On November 2, 2010, Petitioner commenced this habeas corpus action by filing a pro se petition (Dkt. # 1).  Thereafter, while represented by counsel, Petitioner filed a second "mixed petition" (Dkt. # 15).  The Court directed Petitioner to file an amended petition containing only exhausted claims and deleting the unexhausted claims.  See Dkt. # 19.  On September 12, 2011, Petitioner, continuing to be represented by counsel, filed an amended petition (Dkt. # 20), listing only exhausted claims.  In his amended petition, Petitioner identifies six (6) grounds for relief, as follows:

|            | |
|------------|--|
| Ground I:  | Petitioner was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and to [sic] Article II of the Oklahoma Constitution |
| Ground II: | Second stage errors deprived petitioner of a fair sentencing determination in violation of the United States Constitution |
| Ground III:| The evidence presented at Petitioner's trial was insufficient to prove the |

crime beyond a reasonable doubt in violation of U.S. Constitution
Amendment 14

Ground IV:     The admission of misleading, irrelevant, and unfairly prejudicial evidence
denied petitioner of a fair trial

Ground V:      Petitioner's sentence is excessive under the circumstances and should be
modified

Ground VI:     The accumulation of errors deprived Mr. Stanley of a fair trial and a reliable
verdict

(Dkt. # 20).  In response (Dkt. # 22), Respondent argues that as to Grounds I and III, the decision

by the OCCA was not contrary to or an unreasonable application of federal law; that Grounds II and

V are matters of state law and are not cognizable in a federal habeas proceeding; that the evidentiary

rulings raised in Ground IV did not violate the U.S. Constitution, laws, or treaties of the United

States; and that there was no cumulative error as alleged in Ground VI.  Petitioner replies by stating

that he "is held in custody in violation of his 6th, 14th Amendments [sic] rights to the United States

Constitution pursuant to [sic][.]" (Dkt. # 23 at 4).

### *PRELIMINARY CONSIDERATIONS*

On December 9, 2013, Petitioner, represented by counsel, filed a document docketed as a

motion to reconsider.  See Dkt. # 26.  Three days later, Petitioner filed a document entitled "Motion

to Reassert Amended Petition."  See Dkt. # 27.  For the reasons discussed below, both motions are

denied.

**A.  Motion to reconsider**

In his motion to reconsider, counsel for Petitioner explicitly states that Petitioner has now

exhausted his state remedies on previously unexhausted claims.  The full text of the motion to

reconsider is as follows:

> COMES NOW The Petitioner and moves the Court to assert the Position to alive [sic] post conviction relief and schedule The Motion and Denial of relief making exhation [sic] of Petition of relief. The precurserer [sic] of relief would be exhaustion of judicial relief and an opportunity to reassert the amended petition.
>
> The District Court of Tulsa County denied Petitioner['s] Petition for Post Conviction relief on October 31st, 2013 and Petitioner has therefore exhausted his State remedies and reasserts his Motion for a Writ of Habeas Corpus previously filed in this case.

(Dkt. # 26).  Attached to Petitioner's filing is a copy of this Court's prior Opinion and Order, dated August 23, 2011.  See Dkt. # 26-1.  In this Opinion and Order, the Court notified Petitioner that his second habeas petition (Dkt. # 15) contained both exhausted and unexhausted claims and was subject to dismissal as a "mixed petition."  See Dkt. # 19.  Petitioner now appears to request that the Court "reconsider" its prior ruling because he has allegedly exhausted state court remedies for all claims.

Because the Opinion and Order referenced by Petitioner was not a final judgment, Petitioner's motion for reconsideration is considered an interlocutory motion that invokes the Court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.  See Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991).  The Court's discretion to revise its interlocutory orders is not limited to the standards for reviewing a post-judgment motion filed pursuant to Fed. R. Civ. P. Rules 59 and 60.  Lucero v. Medina, 2013 WL 1704524, at *1 (D. Colo. Apr. 18, 2013) (citing Raytheon Constructors Inc. v. ASARCO, Inc., 368 F.3d 1214, 1217 (10th Cir. 2003)).  In this case, counsel for Petitioner fails to explain why the prior Opinion and Order should be revised.  Counsel does not allege that the Court erred in finding that the second petition was a "mixed petition."  Petitioner only asserts that, since entry of the Opinion

and Order, he has exhausted State remedies.  Finding no error in the prior ruling, the Court denies the motion to reconsider.

**B.  Motion to amend**

In the motion to amend, counsel for Petitioner essentially restates the same argument set forth in the motion to reconsider, but does not include the Court's August 23, 2011 Opinion and Order.  The full text of the motion to amend is as follows:

> COMES NOW The Petitioner and moves the Court to reassert the Petition to revive post conviction relief and schedule The Motion and Denial of relief making exhaustion of Petition of relief. The precursor for relief would be exhaustion of state judicial relief and an opportunity to reassert the amended petition entered by Amy McTeer on the on 12th of September 2011.
> The District Court of Tulsa County denied Petitioner['s] Petition for Post Conviction relief on October 31st, 2013 and Petitioner has therefore exhausted his State remedies and reasserts his Motion for a Writ of Habeas Corpus previously filed in this case.

(Dkt. # 27).  After a review of Petitioner's motion to amend, the Court denies the motion because, based on the information presented in the filing, Petitioner has not exhausted his state remedies and the motion to amend, as presented, is time-barred.

Petitioner has not exhausted his state remedies.  In order to exhaust a claim, the applicant "must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam)); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (explaining that the exhaustion requirement dictates that a § 2254 petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review by the State's highest court); Wilson v. Workman, 577 F.3d 1284, 1294 (10th Cir. 2009) (en banc) ("The

allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." (citation and internal quotation marks omitted)). "The exhaustion requirement is satisfied *if the issues have been properly presented to the highest state court*, either by direct review of the conviction or in a postconviction attack." Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999) (internal quotation marks omitted) (emphasis added). Petitioner has presented the claims raised in his application for post-conviction relief, whatever those may be, to Tulsa County District Court, but fails to show that he has perfected a post-conviction appeal to the OCCA, Oklahoma's highest court for criminal matters. Petitioner also fails to identify those previously unexhausted claims that he now wishes to raise in his amended habeas petition. Thus, Petitioner fails to show that he has, in fact, exhausted his state court remedies.

Petitioner's motion to amend is also time-barred. The enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996 "dramatically altered the landscape for federal habeas corpus petitions" by preserving the "total exhaustion" requirement of Rose v. Lundy, 455 U.S. 509 (1982), but at the same time imposing a one-year statute of limitations on the filing of federal petitions. Rhines v. Weber, 544 U.S. 269, 274 (2005). Petitioner filed his current motion to amend on December 12, 2013, or more than two years after the one-year limitations period expired.[2]

_____

[2]Petitioner's convictions became final for purposes of the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1)(A), on July 20, 2010, or 90 days after the OCCA affirmed his conviction on direct appeal on April 21, 2010, when the period for seeking certiorari review in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). Therefore, in the absence of statutory or equitable tolling, Petitioner's one year limitations period began to run on July 21, 2010, and his deadline for filing a timely petition for writ of habeas corpus was July 21, 2011. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R.

Petitioner is not entitled to any statutory tolling because he filed his application for post-conviction relief in state court after the expiration of the one-year limitations period.[3]  A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations.  See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."); Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001).  As a result, the post-conviction proceeding commenced by Petitioner after expiration of the limitations period did not toll the limitations period under 28 U.S.C. § 2244(d)(2). Thus, unless Petitioner can show he is entitled to equitable tolling, the motion to amend is untimely.

Petitioner also has not demonstrated he is entitled to equitable tolling.  A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "'show specific facts to support his claim of extraordinary circumstances and due diligence.'"  Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).  Significantly, equitable tolling applies only in "rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808

---

Civ. P. 6(a) to calculate AEDPA deadline).  The petition in this case was filed November 2, 2010, or before the deadline.

[3]Petitioner filed his application for post-conviction relief in Tulsa County District Court, Case No. CF-2007-4134, on November 30, 2011, or four months after his one-year limitations period expired on July 21, 2011.  See www.oscn.net.

(10th Cir. 2000) (citing <u>Davis v. Johnson</u>, 158 F.3d 806, 811 (5th Cir. 1998)).  Petitioner fails to show any facts or raise any claim of extraordinary circumstances, which prevented his timely pursuit of state court remedies or prevented him from timely filing his motion to amend.  For that reason, the Court denies the motion to amend.

***ANALYSIS OF CLAIMS RAISED IN AMENDED PETITION***

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must decide whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. at 510.  Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to the claims raised in the amended petition (Dkt. # 20).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The AEDPA provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000); <u>Neill v. Gibson</u>, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal

habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In affirming the trial court's judgment and sentence, the OCCA adjudicated the issues raised in the amended petition. Thus, this Court shall review those grounds under § 2254(d).

Insofar as Petitioner claims a violation of the Oklahoma Constitution, those claims are denied because they are not cognizable on federal habeas corpus review. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

1.     **Evidentiary errors deprived Petitioner of a fair trial and sentencing (Grounds II and IV)**

In his second ground for relief, Petitioner argues that evidence, erroneously admitted during the second stage of his trial, deprived him of a "fair sentencing determination in violation of the United States Constitution." (Dkt. # 20 at 6). The evidence at issue were copies of the Judgments and Sentences entered in Petitioner's prior cases reflecting that his sentences had been suspended

or deferred.[4]  (Dkt. # 22-3 at 2).  On direct appeal, the OCCA found that, while this evidence should

not have been admitted, Petitioner's trial counsel "made a strategic decision to rely on this otherwise

inadmissible evidence . . . . [and Petitioner] should not profit on appeal from this strategic decision."

Id. at 3.  Respondent argues that "instead of objecting to the evidence, the Petitioner actually invited

the error by using it to his advantage in an attempt to appeal to the jury at sentencing."  (Dkt. # 22

at 9).  Respondent speculates that "[t]his trial strategy very well could have proven successful as the

jury did not impose the maximum sentence under the law."  Id.  Additionally, Respondent argues

that this is not "an issue proper for federal habeas relief as the issue merely challenges the admission

of evidence under state law."  Id.

    In Petitioner's fourth ground for relief,  Petitioner argues that the following evidentiary errors

were unfairly prejudicial to him at trial: (1) the admission of testimony, used as other crimes

evidence, regarding "a green leafy substance that was never even tested to definitively determine

if it was marijuana result[ing] in the jury being mislead to connect the crime with the possibility of

the possession of marijuana," (2) the admission of "merely a preliminary test and not dispositive nor

accurate to determine" whether the substance was marijuana, and thus, "served no other purpose

than to mislead and prejudice the jury," and (3) the "admission of probation on a drug case in second

stage." (Dkt. # 20 at 8).  The OCCA found that the "evidence was relevant to Counts I and III, and

there was no later test which contradicted the presumptive test results."  (Dkt. # 22-3 at 2).

Respondent argues that the "evidentiary rulings made by the trial court and upheld by the state court

_____

    [4]Petitioner was charged with and pled guilty to Uttering Forged Instruments in Tulsa County
District Court, Case No. CF-1999-1977.  He received a three (3) year suspended sentence.  Petitioner
was charged with and pled guilty to Possession of a Controlled Substance in Tulsa County District
Court, Case No. CF-2000-6462.  He received a three (3) year suspended sentence.  See Dkt. # 7-1,
Tr. Vol. III at 468-69; see also www.ok.gov/doc.

did not deny the Petitioner fundamental fairness." (Dkt. # 22 at 17). Specifically, Respondent argues that the "evidence was completely admissible as the Petitioner was charged with possession of marijuana along with manslaughter," id. at 18, and "the State had to prove that the Petitioner possessed it," id. at 19. Respondent further argues that this evidence was not merely evidence of other crimes, but "was relevant to the crimes charged and shed light on the entire crime." Id. at 18.

As stated above, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle, 502 U.S. at 67-68 (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68; 28 U.S.C. § 2241. Thus, this Court will review Grounds II and IV to determine whether Petitioner was denied due process and a fair trial. Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief cannot be granted on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results" (quoting Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000))). The Court will grant relief only "if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration in original; quotation marks and citation omitted). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the

14

universal sense of justice." United States v. Tome, 3 F.3d 342, 353 (10th Cir. 1993) (quoting United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted)), rev'd, 513 U.S. 150 (1995).

A habeas court evaluates admission of "other crimes evidence" under general due process principles to determine whether evidence was "introduced that is so unduly prejudicial that it renders the trial fundamentally unfair . . . ." Payne v. Tennessee, 501 U.S. 808, 825 (1991) (citing Darden v. Wainwright, 477 U.S. 168, 179-83 (1986)); see also Estelle, 502 U.S. at 69-70; Knighton v. Mullin, 293 F.3d 1165, 1170 (10th Cir. 2002). The Tenth Circuit has held that this standard will be satisfied only if "the probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission . . . ." Knighton, 293 F.3d at 1171 (internal quotation marks omitted).

In ground two, the OCCA determined that the evidence of Petitioner's prior deferred and suspended sentences was improperly admitted by the trial court. (Dkt. # 22-3 at 2). However, the record demonstrates that during his closing argument, Petitioner's trial counsel attempted to use the improperly admitted evidence to Petitioner's advantage. Specifically, Petitioner's counsel, in reference to the two prior felony convictions, stated, "[Petitioner] has never served any time in prison. . . . He was an average member of society trying to live with two felony convictions on his record." (Dkt. # 7-1, Tr. Vol. III at 479). Additionally, Petitioner's trial counsel told the jury, "I don't want to minimize the fact that he has prior convictions. But based on what we're looking at here, he's not a criminal, he doesn't have a criminal mind." Id. at 480. In response to these statements by Petitioner's trial counsel, that the prosecutor told the jury, "Mr. Bergman told you [Petitioner's] never been to jail, he's never been to prison, he's never been held accountable. Look where we are today. He's already been cut enough slack." Id. at 483-84.

15

After careful examination of the trial transcript, the Court finds Petitioner has failed to demonstrate entitlement to habeas corpus relief based on the OCCA's adjudication of this claim on direct appeal. See 28 U.S.C. § 2254(d)(2). Petitioner's counsel tried to use the improperly admitted evidence to Petitioner's advantage, and thus, the Court cannot conclude that the admission of the evidence rendered Petitioner's sentencing fundamentally unfair.

As to ground IV, after a review of the trial transcript, the Court finds that the OCCA's rejection of Petitioner's claim on direct appeal is neither contrary to, nor an unreasonable application of, federal law.  Oklahoma courts permit the testimony of trained police officers as sufficient evidence to prove possession of a controlled drug, such as marijuana. See Acker v. Dinwiddie, 2013 WL 607856, at *4 (N.D. Okla. Feb. 19, 2013) ("Under well-settled Oklahoma law, it is not necessary to have a chemical analysis performed to determine if a substance is marijuana. Cory v. State, 543 P.2d 565, 568-59 (Okla. Crim. App. 1975) (reinforcing the rule that identification of marijuana by police officers on the basis of expertise gained through training and experience was sufficient to take the issue to the jury)."). The state courts' determination that the admitted evidence was relevant to Counts I and III was not erroneous. Furthermore, even if the challenged testimony could be characterized as "other crimes evidence," as Petitioner argues, the admission of the evidence did not render Petitioner's trial fundamentally unfair. Petitioner is not entitled to habeas corpus relief on this claim. See 28 U.S.C. § 2254(d).

Petitioner has failed to point to any case law to support his conclusion that the OCCA's adjudication of this claim is contrary to or involved an unreasonable application of clearly established Federal Law.  Petitioner has also failed to show that the error in admitting the prior judgment and statements was so prejudicial that it "fatally infected the trial and denied the

16

fundamental fairness that is the essence of due process." See Revilla, 283 F.3d at 1212.  Petitioner's requests for habeas relief on Grounds II and IV are denied.

      **2.**        **Ineffective assistance of trial counsel (Ground I)**

In his first ground for relief, Petitioner claims that his trial counsel was ineffective for failing to "properly object to the admission of officer opinion regarding the marijuana absent proper testing," and for failing to object to the use of "probation and parole policies and the suspended sentence" by the prosecutor during the second stage of the trial.  (Dkt. # 20 at 4).  Petitioner argues that his trial counsel "undermined confidence in the outcome of the State sentencing proceeding with [sic] prejudiced Petitioner's Constitutional rights of Due Process and Effective Assistance of Counsel."  Id. at 5.  The OCCA concluded that "counsel was not ineffective for failing to object to the evidence [it] determined was admissible in Propositions I and II."  (Dkt. # 22-3 at 3 (citing Williams v. Taylor, 529 U.S. 362, 393 (2000); Strickland v. Washington, 466 U.S. 668, 687 (1984))).  The OCCA further found that "counsel's strategic decision to use otherwise in admissible sentencing evidence was not ineffective."  Id.

Respondent argues that the decision by the OCCA was not contrary to or an unreasonable application of federal law.  (Dkt. # 22 at 2).  Respondent concludes that, because the OCCA determined the marijuana evidence to be admissible, had counsel "objected and raised the issue at trial, the objection would not have been sustained under Oklahoma law.  Therefore, counsel cannot be ineffective for failing to object to admissible evidence."  Id. at 7.

Under the familiar, two-prong constitutional standard set forth in Strickland, a petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance

was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Assessing attorney performance requires every effort to avoid hindsight bias and evaluate conduct from counsel's perspective at the time. Id. "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 131 S. Ct. 770, 791 (2011) (quoting Strickland, 466 U.S. at 686). "The Strickland standard must be applied with 'scrupulous care.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1408 (2011) (quoting Richter, 131 S. Ct. at 788).

To establish the second prong, a petitioner must show that counsel's deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1472 (10th Cir. 1997). If a petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on the ineffective assistance of counsel claim is "doubly deferential." Pinholster, 131 S. Ct. at 1403 (noting that a habeas court must take a

18

"highly deferential" look at counsel's performance under <u>Strickland</u> and through the "deferential" lens of § 2254(d)).

Counsel is presumed to have acted in an "objectively reasonable manner" and in a manner that "might have been part of a sound trial strategy." <u>Bullock v. Carver</u>, 297 F.3d 1036, 1046 (10th Cir. 2002). Where the facts establish that decisions made by counsel were, in fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options," those decisions are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> at 690-91. Once a decision is determined to be strategic, the a petitioner may only establish deficient performance if "the choice was so patently unreasonable that no competent attorney would have made it." <u>Bullock</u>, 297 F.3d at 1046 (citations and internal quotes omitted).

In his amended habeas petition, Petitioner identifies two instances in which his trial attorney failed to object, thereby providing ineffective assistance of counsel. First, Petitioner complains that counsel failed to object to the admission of police officer testimony regarding the marijuana absent conclusive testing on the substance. (Dkt. # 20 at 4). Counsel for Petitioner argues that "Trial Counsel Bergman's oversight or Ignorance of controlling State Law decisions would led [sic] to Trial Counsel's failure and omission to timely object to inadmissible evidence, and formulate a viable defense." (<u>Id.</u> at 5). As determined above, is well-settled Oklahoma law that chemical analysis is not necessary when identification of marijuana is made by police officers on the basis of expertise gained through training and experience. <u>See</u> <u>Cory v. State</u>, 543 P.2d at 568-69. Thus, Petitioner has failed to show that trial counsel's performance fell below the standard of a reasonable

19

attorney and has failed to show that there is a "reasonable probability" that the result of the proceeding would have been different had his counsel objected to the testimony of the police officer.

Petitioner also complains that his trial counsel "failed to object to the State's injection of probation and parole policies and the suspended sentence admitted at trial." (Dkt. # 20 at 4). The OCCA determined that it was Petitioner's trial counsel who first relied on "this otherwise inadmissible evidence in asking for a lesser sentence." (Dkt. # 22-3 at 4). Thus, it concluded that "counsel's strategic decision to use otherwise inadmissible sentencing evidence was not ineffective." Id. (citing Harris v. State, 164 P.3d 1103, 1118 (Okla. Crim. App. 2007); Lott v. State, 98 P.3d 318, 345 (Okla. Crim. App. 2004)). In his habeas petition, Petitioner states that the OCCA arrived at this conclusion "without any evidence or consistency of strategy to support this assumption." (Dkt. # 20 at 4). Petitioner's habeas counsel argues that "[i]f trial strategy was to mitigate Petitioner's past witb [sic] regard to priors then Counsel would have allowed Defendant and/or character witnesses for Defendant to testify at sentencing." Id.

 Petitioner's conclusory statements that "[t]rial counsel undermined confidence in the outcome of the state sentencing proceeding," id. at 5, and that "[p]resumptions in the Ineffective Assistance analysis articulated by the Tenth Circuit that are typically in Counsel's favor do not apply here," (Dkt. # 23 at 5), are insufficient to overcome the Strickland standard or to show that counsel's decision was not strategic. After a review of the trial transcript, the Court finds that Petitioner's trial counsel clearly conducted a thorough investigation of the case prior to trial. Throughout the trial, Petitioner's trial counsel conducted strenuous cross-examinations of the witnesses, inquiring into witness statements, police reports, police logs, and property receipts. It is clear to the Court that

Petitioner's counsel made the decision to use Petitioner's prior suspended sentences at the second stage of the trial after a thorough investigation.

Counsel also clearly established a strategy of illustrating that Petitioner was not a violent criminal nor was he an individual constantly in trouble with the law.  Counsel told the jury, "I want[] to give you a little background on Mr. Stanley.  His prior felony convictions are not violent.  They're not mean in nature.  They're not against anybody."  (Dkt. # 7-1, Tr. Vol. III at 478).  Counsel concluded his closing argument by stating, "when you're thinking about [what he's done in the past], think about Melvin Stanley and think about the fact that he's not out there trying to hurt people.  He wasn't trying to do any of that.  Poor decision, . . . Please give him another chance."  Id. at 481.  Because of his two prior felony convictions, Petitioner faced a sentence of twenty years to life imprisonment.  Id. at 477.  Counsel's strategic choice to paint an image for the jury that Petitioner was not an individual with violent prior felonies was not unreasonable.  Thus, Petitioner has failed to establish that counsel's strategy was "so patently unreasonable that no competent attorney would have made it."  See Bullock, 297 F.3d at 1046.  Habeas relief as to ground one is denied.

### 3.    Insufficient evidence (Ground III)

In ground three, Petitioner claims he is entitled to habeas relief because the evidence presented at his trial was insufficient to prove the crime of Unlawful Possession of Marijuana beyond a reasonable doubt.  (Dkt. # 20 at 7-8).  The OCCA concluded that the "officers' identification of marijuana based on their training and experience was sufficient evidence to support . . . [the] conviction."  (Dkt. # 22-3 at 2).  Respondent argues that the decision reached by the OCCA "was not contrary to or an unreasonable application of federal law."  (Dkt. # 22 at 10).

21

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319).  In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.  The court must  "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner complains that the green leafy substance identified as marijuana was not proved beyond a reasonable doubt to actually be marijuana.  In particular, Petitioner argues that the "Criminalist OSBI Muhammad Sharif Sandhu testified that the presumptive test was [positive] but no confirmation test was asked for by the District Attorney's Office" on the substance.  (Dkt. # 20 at 8).  Essentially, Petitioner is arguing that no chemical analysis was performed on the green leafy substance found in Petitioner's overturned SUV, to confirm that it was, in fact, marijuana.  To convict Petitioner of this crime, the State had to prove beyond a reasonable doubt that Petitioner knowingly and intentionally possessed marijuana, a controlled dangerous substance. See Dkt. # 7-1, Tr. Vol III at 426-28.  TPD Officer Mitchell Franklin testified that he discovered the bag containing the green, leafy substance during his inventory of Petitioner's SUV at the scene of the accident. (Dkt. # 11, Tr. Vol. II at 278-79).  He testified that this bag was discovered inside the vehicle. Id. at 282.  Officer Franklin is trained in the recognition of marijuana, and estimated that he had come

into contact with marijuana in excess of 500 times.  Id. at 283, 286.  After inspecting the bag, Officer

Franklin identified the substance as marijuana.  Id. at 283.  TPD Officer Jonathan Lartigue, who

accompanied Officer Franklin in transporting the items seized from the scene of the collision to the

property room, also testified that he inspected the bag.  Id. at 304.  Officer Lartigue, based on his

training and his estimation that he had coming into contact with marijuana in excess of 100 times,

testified that he independently identified the substance as marijuana.  Id. at 304-05.

As previously stated, under well-settled Oklahoma law, the identification of marijuana by

police officers on the basis of expertise gained through training and experience is sufficient to take

the issue to the jury.  Cory v. State, 543 P.2d at 568-59.  It is the jury's responsibility to weigh the

evidence presented.  Here, the State presented the testimony of two experienced police officers and

their identification of the green, leafy substance as marijuana.  Thus, when viewed "in the light most

favorable to the prosecution," the evidence was sufficient for a rational trier of fact to have found

that Petitioner was in possession of marijuana at the time of the collision.  See Jackson, 443 U.S. at

319.  Therefore, the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence

was not contrary to, or an unreasonable application of, Supreme Court law, 28 U.S.C. § 2254(d)(1),

or an unreasonable determination of the facts in light of the evidence presented at trial, 28 U.S.C.

§ 2254(d)(2).  See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide

whether sufficiency of the evidence on habeas review presents a question of law or fact).  Petitioner

is not entitled to habeas corpus relief on this claim.

### 4.      Excessive sentence (Ground V)

In ground five, Petitioner claims that the "circumstances of this case do not warrant such a

large sentence that was given."  (Dkt. # 20 at 9).  The OCCA concluded that "under the facts and

circumstances of this case[,] . . . [the] sentence is not excessive.  (Dkt. # 22-3 at 3 (citing <u>Rea v. State</u>, 34 P.3d 148, 149 (Okla. Crim. App. 2001) (reaffirming the use of the "shock the conscience" standard of sentence review and rejecting a "proportionality" standard))).  Respondent argues that "interpretation of the state sentencing statutes are a matter of state law and, without more, presents no federal constitutional issue cognizable in a habeas action."  (Dkt. # 22 at 20).

This Court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law."  <u>Dennis v. Poppel</u>, 222 F.3d 1245, 1258 (10th Cir. 2000).  Indeed, the Court's review generally ends "once we determine the sentence is within the limitation set by statute."  <u>Id.</u>  A sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime."  <u>Ewing v. California</u>, 538 U.S. 11, 21 (2003) (quoting <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980)).  But "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 77 (2003).

Petitioner argues that "[a]bsolutely no evidence was presented that Petitioner was driving recklessly and but for presumptive testing of his blood[,] a crime would not be warranted in this situation as the victim in this case was stumbling into a dark roadway after her own potentially fatal and injurious car wreck."  (Dkt. # 20 at 9).  Petitioner also argues that no "evidence was presented that Petitioner would have under any circumstances been able to avoid said accident."  <u>Id.</u> Respondent argues that the facts of the case show that Petitioner was driving with a suspended

24

license, took steps to "protect himself from being caught for driving under suspension,"[5] "drank enough alcohol to blow a .18 on the breathalyzer,"[6] had marijuana and an open flask in his possession, and "hit an innocent bystander who was searching for help." (Dkt. # 22 at 23). Thus, Respondent argues that Petitioner's sentence is within the range of sentences imposed for this crime. Id.

Petitioner was convicted of First Degree Manslaughter in violation of OKLA. STAT. tit. 21, § 711, Unlawful Possession of a Controlled Drug (Marijuana) in violation of OKLA. STAT. tit. 63, § 2-402, and Driving with a Suspended License in violation of OKLA. STAT. tit. 47, § 6-303. (Dkt. # 22-3). Because Petitioner had been previously convicted of two or more felonies, he faced a sentencing range of twenty (20) years to life in prison. (Dkt. # 7-1, Tr. Vol. III at 477). Thus, the sentences imposed were within the limitations of Oklahoma law. There is no basis for habeas relief on Petitioner's fifth ground of error.

### 5.     Cumulative error (Ground VI)

As his final proposition of error, Petitioner claims that "[a]ll of the errors cited to in the above grounds and propositions taken as a whole denied Petitioner of a fair trial in said matter." (Dkt. # 20 at 10). The OCCA found one instance of error in Petitioner's case, but denied relief

---

[5]Petitioner told Sergeant Malcolm Williams that, on the night of the accident, he went to a nightclub around 11:30 p.m. where he had a couple of beers. Instead of leaving when he exited the nightclub, Petitioner waited in the parking lot for everyone else to leave because "his license was suspended and he didn't want to be involved in traffic." (Dkt. # 7, Tr. Vol. II at 324). Petitioner also told Sergeant Williams that he took this particular route home "because he didn't want to . . . take a chance of getting pulled over by the cops because his license was suspended." Id.

[6]Oklahoma State Bureau of Investigation (OSBI) Criminalist Muhammad Sharif Sandhu, Ph.D., testified at trial that the results of Petitioner's blood test showed his blood alcohol level to be 0.18. See Dkt. # 7-1, Tr. Vol. III at 406.

because "trial counsel made strategic use of otherwise inadmissible evidence." (Dkt. # 22-3 at 3). It concluded that "[t]here is no cumulative error where a single error has been addressed." Id. at 4. Respondent contends that "there was no accumulative of error to warrant the trial fundamentally unfair." (Dkt. # 22 at 24).

The Tenth Circuit has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) (en banc)). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470). "Only if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness' is reversal appropriate." Id. (quoting Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009)). "[A]ll a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Id. at 1026. In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

## C.    Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, the petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  Slack, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the amended petition for writ of habeas corpus shall be denied.


**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.      The original petition (Dkt. # 1) and the second petition (Dkt. # 15) are **declared moot**.

2.      The amended petition for writ of habeas corpus (Dkt. # 20) is **denied**.

3.      Petitioner's motion to reconsider (Dkt. # 26) is **denied**.

4.      Petitioner's motion to amend (Dkt. # 27) is **denied**.

5.      A certificate of appealability is **denied**.

6.      A separate judgment shall be entered in this matter.

**DATED** this 13th day of February, 2014.

James H. Payne
United States District Judge
Northern District of Oklahoma

28